AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 Broadway #1133
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
PAMELA BALL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA BALL<br><br>     Plaintiff,<br><br>v.<br><br><br>RRFSLM LLC dba SPRINGHILL SUITES BY MARRIOTT LANCASTER PALMDALE EDWARDS AIR FORCE BASE<br><br>     Defendant. | CASE NO. 24-cv-08616<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:**<br><br>1.  **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2.  **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3.  **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

1.     **PREFETORY STATEMENT:** This is Plaintiff's first and currently only Americans with Disabilities Act ("ADA") lawsuit. It does not involve any architectural barriers, only service dog denial claims. Plaintiff's law firm is not a high frequency litigation firm, filing approximately eleven cases this year to date in this District. Rein & Clefton represents many different disabled plaintiffs, none of whom are high frequency litigants as defined by state law, and many of whom, like

Plaintiff, are seeking representation for ADA claims for the first time.  Plaintiff
PAMELA BALL complains of Defendant RRFSLM LLC dba SPRINGHILL
SUITES BY MARRIOTT LANCASTER PALMDALE EDWARDS AIR FORCE
BASE and alleges as follows:

2.    **INTRODUCTION:**  Plaintiff and her daughter had a reservation to
stay at the SpringHill Suites by Marriott Lancaster Palmdale for May 5, 2024,
through May 9, 2024.  On or about May 5, 2024, Plaintiff went to check into the
Hotel located at 1811 W Avenue J 12, Lancaster, CA 93534, but Defendant denied
disabled Plaintiff Pamela Ball services and admittance to hotel because she is a
disabled individual who uses a task trained service dog to ameliorate her disability.
Despite the fact that Plaintiff informed Defendant that her dog is a trained medical
alert service dog, Defendant's employee told Plaintiff that would not check her into
the hotel with a dog. Both Plaintiff and her daughter attempted to convince
Defendant's employee at the front desk that it was contrary to the ADA to deny her
admittance with her service dog, but ultimately, Defendant's employee told
Plaintiff that she was cancelling her reservation.  Defendant's employee then asked
a security guard to escort them out, intentionally discriminating against them on the
basis of disability. Plaintiff and her daughter were escorted out of the lobby by
security as if they had done something wrong when all Plaintiff was doing was
asserting her right as a disabled person to use a service dog.

3.    Defendant refused service to Plaintiff because of the presence of her
service dog. Plaintiff was denied service by Defendant because she needs her
service dog to equally enjoy the premises compared with non-disabled persons.
Plaintiff was devastated by her interactions with Defendant.  She and her daughter
had to sleep in her car for the night because she was unable to find another hotel
nearby with a vacancy.

4.    Defendant's decision to bar Plaintiff from staying at the hotel because
of her service dog contravenes the ADA's mandate to allow disabled persons equal

enjoyment of the facility and the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis added).

5.     On May 5, 2024, Defendant refused to allow Plaintiff to stay at its hotel due to the presence of her task trained service dog despite that her service dog was under her control, task trained, and is housebroken. Further, Defendant did not cite either of those as reasons for refusing service to Plaintiff. Defendant simply told Plaintiff that her reservation the SpringHill Suites by Marriott Lancaster Palmdale was cancelled because they do not allow dogs on the premises.

6.     Plaintiff enjoys traveling in California where she regularly stays in hotels, and she maintains a membership in several hotel rewards programs including with Marriott Bonvoy. Plaintiff intends to return to visit the Lancaster area and stay at the SpringHill Suites by Marriott Lancaster Palmdale to enjoy the convenient location as well as the amenities it has to offer. However, she cannot do so until the policies of the Hotel are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training. Plaintiff has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate her for refusing to serve her because she is a disabled person who needs the assistance of her qualified service dog. Plaintiff seeks an injunction to protect the rights of all

disabled persons, including Plaintiff, when accompanied by a qualified service dog at the SpringHill Suites by Marriott Lancaster Palmdale.

7.   **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

8.   **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

9.   **INTRADISTRICT:**  This case should be assigned to the Western Division because the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

10.   **PARTIES:**  Plaintiff Pamela Ball is a "qualified" disabled person who uses the assistance of a service dog to ameliorate her disability.  Plaintiff suffers from an irregular heartbeat which can cause her blood pressure to drop to dangerously low levels.  When her blood pressure drops, she can faint and fall down unless she takes immediate action to raise her blood pressure or at the very least get herself to a safe place.  Plaintiff's disability affects her abilities to walk, stand and think clearly.

11.   Plaintiff relies upon her service dog, a Maltipoo named "Mason" to assist her with certain tasks including alerting her to any decrease in her blood pressure so that she can sit down, put her head between her legs, drink water to hydrate herself before her blood pressure drops to dangerous levels, and take medication if necessary.  In order to alert Plaintiff, Mason is trained to lick Plaintiff's calf to alert, then stand on his hind legs and put his front paws on Plaintiff's knee until Plaintiff takes action to raise her blood pressure.

12.   Plaintiff trained Mason to perform this task herself.  She researched online regarding the training of service dogs, and then she trained him over the

4

course of many months.  She would do so by bringing him close to her whenever she was experiencing symptoms of low blood pressure so that he could see and feel her reactions.  Then, Plaintiff would point to her calf to indicate that Mason should lick her and then gesture for him to put is front paws on her knee.  Whenever he did the task, she would reward him with treats and praise.  Mason and Plaintiff have been working together for over two years.  Plaintiff continues to reinforce the training with Mason daily.  Plaintiff is a qualified person with a disability as defined under federal and state law who is substantially limited in the major life activities of walking, standing, and thinking clearly.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

13.    Defendant RRFSLM LLC dba SPRINGHILL SUITES BY MARRIOTT LANCASTER PALMDALE EDWARDS AIR FORCE BASE, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 1811 W Avenue J 12, Lancaster, California, known as the SpringHill Suites by Marriott Lancaster Palmdale ("Hotel").

14.    The Hotel is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of the categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

15.    **FACTUAL STATEMENT:**  Plaintiff Pamela Ball has been working with her service dog Mason for approximately two and a half years.  Mason is a Maltipoo who was individually trained by Plaintiff to be a service dog.  Plaintiff has also continued to train Mason to serve her specific needs throughout their relationship.  Mason is specifically trained to assist Plaintiff by alerting her to changes in her heart rate and blood pressure so that she can get herself to a safe place in a sitting position in a safe place before her blood pressure drops to dangerous levels.  Prior to working with Mason, Plaintiff was hospitalized several times due to her blood pressure dropping to low.  However, she has not been

hospitalized since working with Mason because he is able to alert her before she realizes her blood pressure is dropping, and Plaintiff can take certain steps to raise her blood pressure before it drops too low.

16.     Mason is a working dog; he is not a pet.  Mason wears a vest identifying him as a service dog. Plaintiff and Mason have trained extensively together, and they supplement that training daily.  Plaintiff takes Mason everywhere with her in public.  It is important they stay together as much as possible because (a) Mason provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. With few exceptions, where Plaintiff goes, Mason goes.

17.     At the time of the incidents, both Plaintiff and her adult daughter were considering a move from Nevada to California. However, neither of them was sure where in California they wanted to live.  Plaintiff and her daughter decided to travel around California, particularly Southern California, for approximately six months to see if they could find a place they really wanted to live.  As a result, they stayed in various hotels from about December of 2023 until the end of the summer 2024 when Plaintiff's mother became ill, and they ceased their travels.  However, Plaintiff is still planning a move to California and will need to stay in hotels such as the SpringHill Suites by Marriott Lancaster Palmdale when she returns to her search for a long-term home. Plaintiff and her daughter also continue to travel together on occasion for trips and getaways, in Southern California

18.     In early May of 2024, Plaintiff made a reservation to stay at the SpringHill Suites by Marriott Lancaster Palmdale for the nights of May 5 through 9, 2024.  Plaintiff, her service dog (Mason), and her daughter (Alyssa) arrived at the Hotel late on May 5, 2024.  They parked their car, exited their vehicle, and walked toward the lobby to check-in.  As Plaintiff was exiting the vehicle, she noticed that a security guard had parked his vehicle beside them, and he continued to follow them when they approached the lobby.

19.     Plaintiff, Mason, and Alyssa approached the door to the lobby of the SpringHill Suites by Marriott Lancaster Palmdale but found it locked.  Plaintiff rang the bell to request entrance to the lobby.  One of Defendant's employees came to the door.  She asked Plaintiff and her daughter if she could help them.  Plaintiff told Defendant's employee that they had a reservation for several nights and would like to enter the lobby to check-in.  Defendant's employee told Plaintiff that Defendant does not allow dogs to stay at the hotel.  Plaintiff told Defendant's employee that Mason is a service dog and is therefore allowed to accompany her inside the hotel even if pets are not allowed.

20.     Defendant's employee allowed Plaintiff, Mason, and Alyssa to enter the lobby of the SpringHill Suites by Marriott Lancaster Palmdale, and the security also followed them inside.  Plaintiff and her daughter approached the reception area to check-in, but Defendant's employee told them that she would not check them in with a dog.  Plaintiff was stunned for a moment, and while she and her daughter were standing at the reception area, another group walked into the lobby to check-in.  Defendant's employee immediately turned to the group who had entered after Plaintiff and began checking them into their room.

21.     Plaintiff and her daughter were understandably upset at being ignored, and they asked to speak to a manager.  When Defendant's employee continued to ignore them, Plaintiff's daughter asked her if this is how she treats all people with disabilities.  Defendant's employee still ignored them.  Both Plaintiff and her daughter then asked Defendant's employee why she was checking in the group who came in after them but ignoring their request to check in.  Defendant's employee ignored them.  Plaintiff and her daughter then asked if they were being ignored because Plaintiff uses a service dog.  Defendant's employee still refused to respond.

22.     At this point, Plaintiff was upset.  She stepped into the lounge area and attempted to call the corporate office of Marriott to resolve the matter.  While Plaintiff was on the phone, her daughter stayed by the check-in desk to attempt to

resolve the matter with Defendant's employee.  However, Defendant's employee called the security guard over and asked him to escort Plaintiff and her daughter out of the lobby.  Defendant's employee then left the lobby area without discussing the matter further with  Plaintiff or her daughter.

23.     The security guard then told Plaintiff and her daughter that they had to leave the premises.  Plaintiff explained that she was on the phone with the corporate Marriott offices trying to deal with the situation, but the security guard forced them to leave the lobby.  Once they returned to their car Plaintiff and her daughter tried to find a nearby hotel to stay in, but they could not find one with an available room.  They had to sleep in their car for the night and find another hotel the following day.

24.     Plaintiff wishes to return to patronize the SpringHill Suites by Marriott Lancaster Palmdale when she has the need for accommodations in the area.  However, Plaintiff cannot return until *after* Defendant has implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the Hotel until these policies and training are in place.

## FIRST CAUSE OF ACTION:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
### (42 USC §§ 12101 *et seq.*)

25.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 24, above, and incorporates them herein by reference as if separately repled hereafter.

26.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing

existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

27.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

28.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

29.    SpringHill Suites by Marriott Lancaster Palmdale is a public accommodation within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(A).

30.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

31.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm Further,

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

*Ibid.*, emphasis in original.

32.    Defendant has a policy and practice of denying treatment and services to patrons with service animals at the Hotel. This is contrary to the ADA. The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis added).

33.    On information and belief, as of the date of Plaintiff's most recent visits to the Hotel on or about May 5, 2024, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

34.    In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

35.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility are one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes any "inn, hotel, motel or other place of lodging..."  42 USC § 12181(7)(A).

36.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of

11

auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

37.    The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

38.    On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

39.  Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Hotel and discriminated and continue to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

40.  Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

41.  Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of § 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize the Hotel, in light of Defendant's policies barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

//

## SECOND CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

42.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 41 of this Complaint and incorporates them herein as if separately re-pleaded.

43.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

44.    California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

45.    Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

46.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

14

47.     The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory and compensatory to Plaintiff, according to proof.

48.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

49.     Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC**
**FACILITIES  IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

50.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 49 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

51.     Under the California Disabled Persons Act (CDPA), people with

disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

52.    Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with to "accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices…or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

53.    Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

54.    Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

55.    Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

56.    SpringHill Suites by Marriott Lancaster Palmdale is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

57.    Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from their public accommodation and thereby deny Plaintiff's her right of entrance into their place of business with her service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being essentially barred from entering this public accommodation and place of business based upon Defendant's exclusion of Plaintiff's legally protected use of her service dog.  Plaintiff has continued to suffer denial of access to these facilities, and she faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities.  Plaintiff is unable to return to the Hotel until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since May 5, 2024, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

58.    **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled and who require the assistance of service animals from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that Plaintiff is a person with disabilities who requires the assistance of a service animal.

59.    Plaintiff wishes to return to patronize SpringHill Suites by Marriott Lancaster Palmdale but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further

difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continues, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize the Hotel and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

60. The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendant's inaccessible policies. As to the Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons and those associated with them, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

61. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws. Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

62. **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of her civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty,

discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated. Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize SpringHill Suites by Marriott Lancaster Palmdale and will continue to cause her damages each day these barriers to access and policy barriers continue to be present.

63.     Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for Plaintiff's rights and safety.

64.     **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the

public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

65.     Plaintiff suffered damages as above described as a result of Defendant's violations.  Damages are ongoing based on their deterrence from returning to the Hotel.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief she requests.  Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Pamela Ball prays for judgment and the following specific relief against Defendant:

1.     An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

b. To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and patronize SpringHill Suites by Marriott Lancaster Palmdale;

c. That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its

20

agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    d.  An order retaining jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2.    An award to Plaintiff of statutory, actual, general, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3.    An award of civil penalty as against Defendant under California Penal Code § 365.5(c);

4.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5.    An award of prejudgment interest pursuant to Civil Code § 3291;

6.    Interest on monetary awards as permitted by law; and

7.    Grant such other and further relief as this Court may deem just and proper.

//

Date: October 7, 2024                    REIN & CLEFTON

                                        _/s/ Aaron M. Clefton_
                                        By AARON M. CLEFTON, Esq.
                                        Attorneys for Plaintiff
                                        PAMELA BALL

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: October 7, 2024                    REIN & CLEFTON

                                        _/s/ Aaron M. Clefton_
                                        By AARON M. CLEFTON, Esq.
                                        Attorneys for Plaintiff
                                        PAMELA BALL

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES